[Cite as *State v. Russell*, 2021-Ohio-3982.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| -vs- | : |  |
|  | : |  |
| DALE M. RUSSELL, JR. | : | Case No. 2021 CA 0026 |
|  | : |  |
| Defendant-Appellant | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:      Criminal appeal from the Licking County
Court of Common Pleas, Case No. 20CR59

JUDGMENT:      Affirmed in part; Reversed in part;
Remanded

DATE OF JUDGMENT ENTRY:      November 8, 2021

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

WILLIAM C. HAYES      WILLIAM T. CRAMER
Licking County Prosecutor      40 Olde Worthington Road, Suite 200
By: PAULA M. SAWYERS      Westerville, OH 43082
Assistant Prosecutor
20 S. Second Street, 4th Floor
Newark, OH 43055

*Gwin, P.J.*

{¶1} Defendant-appellant Dale Russell, Jr. [Russell] appeals his convictions and sentences after a jury trial in the Licking County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On May 29, 2020 at approximately 2:00 a.m., Jeremy Hart returned to the home he shared with his girlfriend of nine years and their four children.   Hart was holding his head and had blood all over him. He was crying and kept asking why Russell who was also known as "Mikey" had hit him in the head. Hart was hugging his  children and saying goodbye. Hart's girlfriend Kim Rothgeb had to keep slapping Hart to keep him awake because he was going unconscious and she thought he might die. Rothgeb called 9-1-1.

{¶3} Kyle Sands a firefighter EMT with the Refugee-Canyon Joint Fire District and the Thorn Township Fire Department responded to the home and found Hart to be alert and oriented but confused as to why he had been hit.

{¶4} Officer Eric Shaw responded to the initial call and found Hart bleeding from the top of his head. Hart did not remember exactly what happened but said he believed that Russell hit him in the head with a pipe wrench. Hart said that Russell assumed he was sleeping with his wife.

{¶5} Hart testified that on the night of May 28, 2020, he and Russell walked next door to another trailer where several people had gathered to smoke drugs.  At some point, Russell asked to speak alone with Hart about Russell's wife. Hart put Russell off until later saying it was not a good time to talk.  Russell asked if Hart had any methamphetamine and Hart gave Russell a gram because they were friends.  Hart then heard Russell walk

to the tool chest behind him and heard a clinking sound. Just as Hart was handing the bong to another friend, he turned and saw Russell hit him with a pipe wrench. Russell wrestled Hart to the ground and said: "Did you think I was fucking playing? I told you not to fuck with my wife." Russell went to hit him again, but one of the other men stopped him.

{¶6} Hart admitted using methamphetamine that night along with the other people who were at the other trailer. Hart admitted he was addicted to meth and that was what he did socially with that group of people. Hart testified that he had to be life-flighted from Licking Memorial Hospital to Grant Hospital due to bone fragments lodging in his brain.

{¶7} A few weeks after the incident, Russell came by to apologize and gave Rothgeb $100.00. Russell told her he had done this to people before, but he was very sorry about this one because he knew that Hart was not having an affair with his wife. Russell said something about the devil taking over his body that night. Rothgeb testified that since the incident, Russell's wife and some mutual friends had been pressuring them to leave and not testify against Russell. Rothgeb said they felt threatened by some of the mutual friends. Rothgeb testified that a neighbor gave the pipe wrench to Hart, but Hart gave it to Russell because he was trying to maintain their friendship even after the incident.

{¶8} On December 15, 2020, Officer James Martin of the Hebron Police Department interviewed Russell. Russell began by saying that he was not the one who hit Hart, but also admitted that he had a violent history. Russell said he ran away from the trailer park afterwards because he knew he would be blamed due to his violent past.

Russell admitted that he had been arguing with his wife and claimed that Hart was upset about communications between the wife and Rothgeb. Russell said that Hart did some posturing, and Russell told him that if they were going to fight they would fight, but nothing came of it.

{¶9}　On cross-examination, Officer Martin read from his report indicating that Russell said that Hart was involved with some bad people dealing drugs. Two unknown men came over that night and Hart went outside to talk with them. At some point, Russell looked outside and Hart was on the ground and the two men appeared to be robbing him. Russell and two other men ran outside and chased off the unknown men. When Russell tried to help Hart back into the trailer, Hart became hostile and asked why he had hit him. Russell then ran off because he knew he would be blamed since Hart thought it was him.

{¶10}　Officer Martin testified that he took the December statement from Hart. In that statement, Hart indicated that he had been dealing with two other individuals and was standing in the door to the other trailer when he heard a clicking sound and saw a white flash. Hart said he did not know who hit him, but thought it was Russell because he was standing over him.

{¶11} Hart testified that he gave a different statement because he was trying to cover for Russell, who was an old friend. Russell had been trying to maintain their friendship by taking Hart fishing and apologizing. Russell had even attempted to arrange jobs for Hart and Rothgeb. In June 2020, Hart provided a written statement to the police identifying Russell as the assailant.

{¶12}　Erik McCourt, an investigator with the Licking County Prosecutor's Office identified a number of phone calls and phone visits between Russell and his wife. In these,

Russell appear to be attempting to ensure that Hart would not be available to testify against him.

{¶13} The parties stipulated Hart had suffered "serious physical harm" as a result of being hit in the head with an object on May 29, 2020. T. at 178-179.

{¶14} The jury found Russell guilty of felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(2) and felonious assault causing serious physical harm in violation of R.C. 2903.11(A)(1), both second-degree felonies. The trial court proceeded directly to sentencing and imposed concurrent indeterminate prison terms of eight to twelve years on each count.

*Assignments of Error*

{¶15} Russell raises two Assignments of Error,

{¶16} "I. APPELLANT'S CONVICTIONS FOR FELONIOUS ASSAULT WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

{¶17} "II. APPELLANT WAS IMPROPERLY SENTENCED ON A SECOND FELONIOUS ASSAULT THAT WAS NEVER ADDRESSED ON THE RECORD DURING THE SENTENCING HEARING."

I.

{¶18} In his First Assignment of Error, Russell argues that the jury verdict is against the manifest weight of the evidence. Specifically, Russell argues that the jury lost their way in determining that he was actually the one who hurt Hart, based upon an argument that the jury could not have found Hart credible due to his inconsistent statements.

{¶19} Russell was convicted of two counts of felonious assault. The first count related to the use of a deadly weapon and required proof that Russell knowingly caused or attempted to cause physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2).The second count required proof that Russell knowingly caused serious physical harm to another. R.C. 2903.11(A)(1). The parties stipulated Hart had suffered "serious physical harm" as a result of being hit in the head with an object on May 29, 2020. T. at 178-179. Accordingly, the only issue was the identity of the person who struck Hart.

**Standard of Appellate Review – Manifest Weight.**

{¶20} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

> \* \* \*

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with

the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶21} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶22} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist.

1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions for felonious assault must be reversed and a new trial ordered.*

{¶23} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶24} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw and hear Hart subject to cross-examination. The jury heard Hart's previous

statements about what led up to his injury as well as his explanations about his motivation for lying to the police and claiming Russell did not strike him. Thus, a rational basis exists in the record for the jury's decision.

{¶25} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Russell's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Russell's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Russell of felonious assault.

{¶26} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of felonious assault for which Russell was convicted.

{¶27} Russell's First Assignments of Error is overruled.

II.

{¶28} In his Second Assignment of Error, Russell argues that the trial court erred by sentencing him on two counts of Felonious Assault in its judgment entry at sentencing, arguing that he was not sentenced on two counts of Felonious Assault during the actual sentencing hearing. Russell further maintains, "Although the parties never raised the issue of merger in the trial court, this case seems like an obvious situation for merger under R.C. 2941.25. Russell was merely accused of striking a single victim one time, and

the two assault counts were pled as alternative means of committing the same offense. It seems likely that the parties remained silent on the issue of merger because they assumed that was what the court was doing when it only imposed one prison term." [Appellant's Brief at 9].

**Standard of Review – Plain Error**

{¶29} In this case, Russell failed to object to his sentences in the trial court. In *State v. Rogers*, the Ohio Supreme Court recently examined a case where the defendant was convicted of multiple offenses pursuant to a guilty plea. *State v. Rogers* 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860. The defendant appealed and argued for the first time on appeal that some of the convictions should have merged for sentencing. Id. at ¶ 11. The matter was certified as a conflict and presented to the Ohio Supreme Court. In making its decision, the Court clarified the difference between waiver and forfeiture as it pertains to allied offenses. Id. at ¶19–21. The Court rejected the argument that by entering a guilty plea to offenses that could be construed to be two or more allied offenses of similar import, the accused waives the protection against multiple punishments under R.C. 2941.25. Id. at ¶ 19. The Court held that an accused's failure to seek the merger of his or her convictions as allied offenses of similar import in the trial court, the accused forfeits his or her allied offenses claim for appellate review. Id. at ¶ 21. "[F]orfeiture is the failure to timely assert a right or object to an error, and * * * 'it is a well-established rule that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." '"Id. at ¶ 21.

{¶30}   The accused may raise a forfeited claim on appeal through Crim.R. 52(B). Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Court held in *Rogers:*

> An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*Rogers,* 2015–Ohio–2459, ¶ 3. The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. Id. at ¶ 23. The Supreme Court stated:

> We have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' "(Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Rogers* at ¶ 23. *Accord, State v. Carr,* 5th Dist. Ashland No. 15-CA-00007, 2016-Ohio-9,

¶ 10- 12; *State v. Starr,* 5th Dist. Ashland No. 16-COA-019, 2016-Ohio-8179, ¶10-12.

**Issue for Appellate Review**: *Whether the trial court committed plain error by not merging Russell's convictions as allied offenses.*

{¶31} R.C. 2941.25, Multiple counts states:

Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶32} In *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence,

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors-the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Ruff,* at syllabus. The Court further explained,

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

* * *

An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

{¶33} In the case at bar, only one criminal act was alleged and proven during Russell's jury trial. Hart was struck one time with an object resulting in serious physical harm.

{¶34} "Deadly weapon" is defined in part as "any instrument, device, or thing capable of inflicting death and ... possessed, carried, or used as a weapon." R.C. 2923.11(A). In the case at bar, the weapon used was a pipe wrench. The evidence presented at trial established that the pipe wrench was wielded as a weapon. Hart testified that he had to be life-flighted from Licking Memorial Hospital to Grant Hospital due to

bone fragments lodging in his brain. Thus, the evidence at trial established the pipe wrench's capability to inflict death.

{¶35} In the case at bar, Russell was indicted with alternative means of committing a single criminal act. Pursuant to *Rogers*, it is Russell's burden to demonstrate a reasonable probability that the convictions were for allied offenses of similar import committed with the same conduct and without a separate animus. On this record, we find that Russell has demonstrated a probability that he was convicted of allied offenses of similar import committed with the same conduct and with the same animus.

{¶36} In the case at bar, we find that the felonious assault charge under R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2) were committed through a single criminal act and with single state of mind. Therefore, the charges in count one and two are allied offenses and should have been merged. The state retains the right to elect which allied offense to pursue on resentencing. Therefore we find that the trial court committed plain error in failing to merge the offenses for sentencing.

{¶37} In cases in which the imposition of multiple punishments is at issue, R.C. 2941.25(A)'s mandate that a defendant may only be "convicted" of one allied offense is a protection against multiple sentences rather than multiple convictions. *See, e.g., Ohio v. Johnson,* 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). A defendant may be indicted and tried for allied offenses of similar import, but may be sentenced on only one of the allied offenses. *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 42. Because R.C. 2941.25(A) protects a defendant only from being punished for allied offenses, the determination of the defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for

sentencing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 27. Thus, the trial court should not vacate or dismiss the guilt determination on each count. Id.

{¶38} We recognize that the trial court imposed the sentence for Count One concurrently with the sentence for Count Two. However, the imposition of concurrent sentences is not the equivalent of merging allied offenses. *State v. Damron,* 129 Ohio St.3d 86, 2011-Ohio-2268, 95 N.E.2d 512, ¶17. Therefore, a trial court must merge the crimes into a single conviction and impose a sentence that is appropriate for the offense chosen for sentencing. Id. *citing* State *v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 41–43.

{¶39} "When a cause is remanded to a trial court to correct an allied-offenses sentencing error, the trial court must hold a new sentencing hearing for the offenses that remain after the state selects which allied offense or offenses to pursue. R.C. §§ 2929.19(A), 2941.25." *State v. Wilson,* 121 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381 at paragraph one of the syllabus. Only the sentences for the offenses that were affected by the appealed error are reviewed de novo; the sentences for any offenses that were not affected by the appealed error are not vacated and are not subject to review. *Wilson* at ¶15 citing *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, at paragraph three of the syllabus.

{¶40} Russell's Second Assignment of Error is sustained.

{¶41} The judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed in part, and reversed in part. Russell's sentences on Count One and Count Two are vacated. In accordance with the Ohio Supreme Court's decision in *State v. Wilson*,

129 Ohio St.3d 214, 2011–Ohio–2669, 951 N.E.2d 381, we remand this case to the trial court for further proceedings consistent with that opinion.


By Gwin, P.J.,

Wise, John, J., and

Delaney, J., concur