[Cite as *State v. Morrissey*, 2021-Ohio-4471.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 6-21-02

    v.

JOHN JOSEPH MORRISSEY, III,        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. CRI 20212005

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: December 20, 2021

APPEARANCES:

    *Howard A. Elliott* for Appellant

    *McKenzie J. Klingler* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, John Joseph Morrissey, III ("Morrissey"), appeals his conviction and sentence of the Hardin County Court of Common Pleas. For the reasons that follow, we affirm in part and reverse in part.

{¶2} This genesis of this case is the armed robbery of the Village Pantry (a gas station) located at 350 South Main Street, Kenton, Ohio in the early morning hours of December 27, 2020. During the course of the robbery, a white male assailant (wearing a hooded sweatshirt, coat, full face covering, and glasses) pointed a gun at two employees of the gas station ordering them to open the cash register (demanding they give him the money inside) while threatening to pull the trigger if they did not follow his commands. The suspect left the gas station with $154 in cash from the register.

{¶3} On January 14, 2021, the Hardin County Grand Jury indicted Morrissey on seven criminal counts including: Counts One and Three, Aggravated Robbery in violation of R.C. 2911.01(A)(1), (C), both first-degree felonies; Counts Two and Four, Kidnapping in violation of R.C. 2905.01(A)(2), (C)(1), each second-degree felonies; Count Five, Theft in violation of R.C. 2913.02(A)(1), (B)(2), a first-degree misdemeanor; Count Six, Possessing Criminal Tools in violation of R.C. 2923.24(A), (C), a fifth-degree felony; and Count Seven, Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), (B), a third-degree felony.

(Doc. Nos. 1, 20, 23). The indictment included firearm specifications as to Counts One, Two, Three, Four, and Seven and repeat violent offender ("RVO") specifications as to Counts One, Two, Three, and Four. (Doc. No. 1). On January 19, 2021, Morrissey appeared for arraignment and entered pleas of not guilty. (Doc. No. 6).

{¶4} Morrissey's case proceeded to a jury trial on March 17, 2021, and he was found guilty by a jury of all counts.[1] (Doc. Nos. 58, 59, 60, 61, 62, 63, 64, 66). Further, the jury found that Morrissey did have a firearm "on or about [his] person or under [his control] while committing the offense[s] and displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense[s][]" as to Counts One, Two, Three, Four, and Seven. (Doc. Nos. 58, 59, 60, 61, 64, 66).

{¶5} On March 31, 2021, the trial court sentenced Morrissey.[2] (Doc. No. 69). The trial court sentenced Morrissey to a mandatory prison term for a minimum of 11 years to a maximum of 16.5 years on Count One with the eight-year mandatory prison term on Count Two to be served concurrently. (Id.). The trial court imposed a mandatory term of 10 years on the RVO specification, and a 3-year mandatory

---

[1] Moreover, the jury found (as to Counts One, Two, Three, and Four) that Morrissey did attempt to cause or threatened to cause serious physical harm to a person; that Morrissey did release the two kidnapping victims (as to Counts Two and Four) in a safe place unharmed; and that he possessed the criminal tools for use in the commission of a felony under Count Six. (Doc. Nos. 58, 59, 60, 61, 63).
[2] The trial court reviewed a post-sentence investigation report prepared for the Hardin County Common Pleas Court in case number CRI 20122074. (Doc. No. 69).

term on the firearm specification; an 11-year term on Count Three to be served concurrent to an eight-year term on Count Four; 12 months on Count Six; and 36 months on Count Seven. (*Id.*). The trial court merged Counts One and Five. (*Id.*). The prison terms imposed by the trial court yielded an aggregate sentence of a minimum of 35 years mandatory and 48 months non-mandatory, with a maximum of 44.5 years mandatory and 48 months non-mandatory plus an additional 1648 days for Morrissey's post-release control violation. (Mar. 31, 2021 Tr. at 47-50); (Doc. No. 69). The judgment entry of sentencing was filed on April 2, 2021. (*Id.*)

{¶6} Morrissey timely filed his notice of appeal on April 12, 2021. (Doc. No. 72). Morrissey raises three assignments of error for our review. For ease of our discussion, we will first review Morrissey's first and second assignments of error together then his third assignment of error separately.

### Assignment of Error No. I

**None of the convictions herein for aggravated robbery, kidnapping, possession of criminal tools, theft, and possessing weapons under a disability, are supported by sufficient evidence and as such all convictions herein are improper and must be vacated.**

### Assignment of Error No. II

**None of the convictions herein for aggravated robbery, kidnapping, possession of criminal tools, theft, and possessing weapons under a disability, are supported by sufficient evidence and the convictions are against the manifest weight of the evidence and must be vacated.**

-4-

{¶7} In his first and second assignments of error, Morrissey argues that his convictions are based on insufficient evidence *and* are against the manifest weight of the evidence. In particular, in his first assignment of error, Morrissey argues that the State presented insufficient evidence as to the issue of identity, and therefore he could not have been convicted of any of the offenses. In his second assignment of error, Morrissey argues that the weight of the evidence demonstrates that the jury lost their way (by finding him guilty) because the State offered witnesses that contained variations as to the identification of the suspect.

*Standard of Review*

{¶8} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997), *superseded by statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Thus, we address each legal concept individually.

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by statute on other grounds*, *Smith* at 89. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 1st Dist. Hamilton No. C-110097, 2011-Ohio-6267, ¶ 25. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶10} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v.*

*Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

{¶11} Notably, Morrissey moved the trial court for a judgment of acquittal under Crim.R. 29(A) at the conclusion of the State's case-in-chief and renewed his motion at the conclusion of all the evidence. (*See* Mar. 18, 2021 Tr., Vol. II, at 626, 628-629, 656).

{¶12} Morrissey was convicted of all seven counts in the indictment. (Mar. 19, 2021 Tr., Vol. III, at 722-728); (Doc. Nos. 58, 59, 60, 61, 62, 63, 64, 66). Specifically, Morrissey was convicted of two counts of Aggravated Robbery in violation of R.C. 2911.01(A)(1), which provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[]".

{¶13} Further, Morrissey was convicted of two counts of Kidnapping in violation of R.C. 2905.01(A)(2), which provides: "[n]o person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o facilitate the commission of any felony or flight thereafter[]".

{¶14} Morrissey was also convicted of Theft in violation of R.C. 2913.02(A)(1), which provides: "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[]".

{¶15} Morrissey was further convicted of Possessing Criminal Tools in violation of R.C. 2923.24(A), which provides: "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶16} Finally, Morrissey was convicted for Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), which provides: "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been convicted of any felony offense of violence * * *."

{¶17} Importantly, Morrissey does not dispute any of the underlying elements of any of the offenses of which he was convicted; rather, he disputes only the issue of identity as to his convictions. Thus, we need only address the identity element of the offenses.

{¶18} "'It is well settled that in order to support a conviction, the evidence must establish beyond a reasonable doubt the identity of the defendant as the person

who actually committed the crime at issue.'" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 13, quoting *State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014-Ohio-1226, ¶ 27, citing *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 19 and *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶ 11.

{¶19} In his sufficiency-of-the-evidence challenge, Morrissey argues that a rational trier of fact could not have found that he was involved in the robbery of the Village Pantry because the perpetrator was wearing dark clothing and a full facial covering and was never apprehended at or near the crime scene. (Appellant's Brief at 8). Morrissey contends that his convictions are based on insufficient evidence because the State presented an entirely circumstantial case against him. In other words, the State offered no direct evidence that he committed any of the crimes charged. "'Circumstantial evidence' is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning or other facts.'" *Lawwill* at ¶ 12, quoting *State v. Wells*, 12th Dist. Warren No. CA2006-02-029, 2007-Ohio-1362, ¶ 11, citing *State v. Griesheimer*, 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837, ¶ 26. Circumstantial evidence has no less probative value than direct evidence. *Griesheimer* at ¶ 26, citing *Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus. *See also State v. Heinish*, 50 Ohio St.3d 231, 238 (1990) ("This court has long held that circumstantial evidence is sufficient to sustain a conviction if that

evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.").

{¶20} Indeed, the record before us contradicts Morrissey's arguments. The State presented circumstantial evidence that Morrissey was the person responsible for the robbery of the Village Pantry. Specifically, Morrissey was first identified as a person of interest in the investigation by his own family members. Importantly, Morrissey *admitted* to committing the Village Pantry robbery to Cody Gawkins (an inmate in his cellblock at Multi-County Correctional Facility) who testified at his trial and was subject to cross-examination. (*See* Mar. 17, 2021 Tr., Vol. I, at 247-280, 282-289, 400-407); (Mar. 18, 2021 Tr., Vol. II, at 492-511); (State's Exs. 28, 35, 36).

{¶21} Nonetheless, Morrissey opines that the evidence is insufficient to establish that he was the person who committed the offenses due to discrepancies and variations in witnesses' testimonies relating to his height, his mannerisms, and his voice. To us, Morrissey is arguing the issue of credibility of the witnesses. Assessing the credibility and weight of the evidence is primarily the role of the trier-of-fact. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 106, citing *State v. DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. In this case, the jury had such a role. In reviewing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses. Instead, we are to

determine if any rational trier of fact could have found the essential elements of each offense beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus; *Jones*, 2013-Ohio-4775, at ¶ 33.

{¶22} Accordingly, viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Morrissey was the person who committed the offenses based upon the testimonies of Tyler Triplett (his cousin), Shannon Miller (his mother), Kenton City Police Department Patrolman Melvin Yoder, Susan Long, Melissa Brown (his girlfriend), Joseph Stone (his girlfriend's roommate), Cory Gawkins (his blockmate), Laura Gettings, and Kenton City Police Detective Daniel Kemmere. As such, all of Morrissey's convictions are based on sufficient evidence.

{¶23} Having concluded that Morrissey's convictions are based on sufficient evidence, we address Morrissey's arguments that his convictions are against the manifest weight of the evidence.

*Manifest Weight of the Evidence Analysis*

{¶24} Similar to his sufficiency-of-the-evidence arguments, Morrissey argues that the evidence identifying him as the person who committed the offenses at the Village Pantry lacked credibility and reliability by virtue of the variations and conflicting witnesses' testimonies' presented. In particular, Morrissey contends that

the witness testimonies as to his height, his mannerisms, and his voice (as argued in his sufficiency assignment of error) were against the manifest weight of the evidence to establish that Morrissey was the person who committed the offenses.

{¶25} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶26} Here, Morrissey does not attack a specific witnesses' credibility, rather, he argues that because there were discrepancies in the testimonies, that should have weighed heavily against his convictions. Notwithstanding his arguments, "we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 3d Dist. Paulding No. 11-14-05, 2015-Ohio-222, ¶ 33, quoting *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 125, citing *DeHass* at paragraph one of the syllabus. Indeed, the jury heard the witnesses' testimonies and was in the best position to

determine whether the testimonies (as to discrepancies and variations) were credible.

{¶27} Moreover, the evidence that we summarized in our sufficiency-of-the-evidence analysis (supporting Morrissey's convictions) is weightier than the evidence against it, and thus, we cannot say that the evidence weighs heavily against Morrissey's convictions. Accordingly, we cannot conclude that the jury clearly lost its way, which created such a manifest miscarriage of justice that Morrissey's convictions must be reversed.

{¶28} Accordingly, Morrissey's first and second assignments of error are overruled.

## Assignment of Error No. III

**Unless there is a significant passage of time for the restraint of a victim or a significant movement during the offense from one location to another the offenses of aggravated robbery and kidnapping must be merged.**

{¶29} In his third assignment of error, Morrissey argues that his convictions for Aggravated Robbery and Kidnapping are subject to merger. Specifically, Morrissey argues that the trial court should have merged his Aggravated Robbery convictions (under Counts One and Three) with his Kidnapping convictions (under

Counts Two and Four) pursuant to R.C. 2941.25 because there was no significant lapse of time or relocation of the victims to support a separate animus.[3]

*Standard of Review*

{¶30} R.C. 2941.25, Ohio's multiple-count statute, prohibits the imposition of multiple sentences for allied offenses of similar import. It provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(A)-(B).

{¶31} Whether offenses are allied offenses of similar import is a question of law that this court reviews de novo. *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio 894, ¶ 128, citing *State v. Stall*, 3d Dist. Crawford No. 3-10-12, 2011-Ohio-5733, ¶ 15, citing *State v. Brown*, 3d Dist. Allen No. 1-10-31, 2011-Ohio-1461, ¶ 36, citing *State v. Loomis*, 11th Dist. Ashtabula No. 2002-A-0102, 2005-Ohio-1103, ¶ 8. When applying de novo analysis, we must independently determine whether

---

[3] Significantly, Morrissey concedes in his brief that there are two victims at issue and thus that there is separate animus as to each victim supporting the two counts of Aggravated Robbery and two counts of Kidnapping. *See* R.C. 2941.25(B).

the facts satisfy the applicable legal standard without deference to the conclusions of the trial court. *State v. Johnson*, 3d Dist. Allen No. 1-13-45, 2014-Ohio-4750, ¶ 12, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997), *superseded by state regulation on other grounds*, *State v. Schmehl*, 3d Dist. Auglaize No. 2-05-33, 2006-Ohio-1143, ¶ 22.

*Analysis*

{¶32} "Separate convictions are permitted under R.C. 2941.25 for allied offenses if we answer affirmatively to just one of the following three questions: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separate? And (3) Were they committed with a separate animus or motivation?" *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 76, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph three of the syllabus.

{¶33} The Supreme Court of Ohio held that "for purposes of R.C. 2941.25(A), a conviction is a determination of guilt and the ensuing sentence." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 13, *superseded by state statute on other grounds*, *United States v. Mackey*, S.D.Ohio No. 3:04cr00096, 2014 WL 6606434, *2 (Nov. 20, 2014), fn. 4. Indeed, recognizing "R.C. 2941.25(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences rather than multiple convictions." *Id*. at ¶ 18.

Because "a defendant may be found guilty of allied offenses but not sentenced on them," "[t]he defendant is not 'convicted' for purposes of R.C. 2941.25(A) until the sentence is imposed." *Id.* at ¶ 17, 24. And, therefore, merger of allied offenses occurs at sentencing. *Id.* at ¶ 18. Importantly, Morrissey was convicted and sentenced for two counts of Aggravated Robbery and two counts of Kidnapping.

{¶34} Although, we recognize that the trial court imposed concurrent sentences for Count One with Count Two and Count Three with Count Four, the imposition of concurrent sentences is not the equivalent of merging allied offenses. *See State v. Russell*, 5th Dist. Licking No. 2021 CA 0026, 2021-Ohio-3982, ¶ 38, citing *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, ¶ 17. Hence, a trial court must merge the crimes into a single conviction and impose a sentence that is appropriate for the offense chosen for sentencing. *Id.* citing *id.*, citing *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, at ¶ 41-43.

{¶35} Here, Morrissey specifically challenges the time frame and the relocation involved in the restraint of the victims as to the kidnapping. (Appellant's Brief at 16). Indeed, a brief restraint of the victim is present in every Aggravated Robbery. *State v. Morris*, 1st Dist. Hamilton No. C-150421, 2016-Ohio-5490, ¶ 17, citing *State v. Jenkins*, 15 Ohio St.3d 164, 198 (1984), fn. 29. To determine whether kidnapping and another offense are subject to merger, the primary question is "whether the restraint or movement of the victim is merely incidental to a separate

underlying crime or, instead, whether it has a significance independent of the other offense." *State v. Logan*, 60 Ohio St.2d 126, 135 (1979)[4]; *Morris* at ¶ 17. Where the restraint of the victim is prolonged, the confinement of the victim secretive, or the movement of the victim is substantial, there exists a separate animus for each offense. *Logan* at syllabus; *Morris* at ¶ 17, citing *Logan* at 135. A separate animus also exists where "the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime." *Logan* at syllabus.

{¶36} Because this issue involves a fact-specific analysis, we undertake a review of the record as it pertains to the Aggravated Robbery and Kidnapping offenses. The State offered (in its case-in-chief) the testimony of Ashley Arnold ("Arnold"), a third-shift employee at Village Pantry working in the early morning hours on December 27, 2020. (Mar. 17, 2021 Tr., Vol. I, at 191-192). Arnold testified that she was in an office area (behind a cigarette wall) directly behind the cash registers, seated in a chair talking to her co-worker Dakota Johnson ("Johnson") and clocking out of her shift. (*Id.* at 192-195). According to Arnold's testimony, she observed a white male (approximately six-foot-tall) dressed in all black with a gun enter the gas station from the Detroit Street entrance. (*Id.* at 196,

---

[4] "Although the 'two-step' analysis prescribed by the Supreme Court of Ohio in *Logan* has been overruled, the court's discussion of animus remains relevant under the current tripart test prescribed in *Ruff*." *Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894, ¶ 131, fn. 2.

207, 218-219). Arnold testified the suspect pointed the gun at her and Johnson and demanded the money in the register, but that he had to tell her a second time because she was in shock. (*Id.* at 197). Arnold testified that she then asked Johnson to open the register because she had been operating it throughout the evening. (*Id.*). Arnold testified that Johnson went to the register, and she froze. (*Id.* at 197-198). The suspect told her to get out of the office and grabbed her coat to pull her out and push her towards the register. (*Id.* at 198). Arnold further testified that by that time Johnson had already opened the drawer exposing the cash. (*Id.* at 199). According to Arnold, she asked the suspect (out of nervousness) if he wanted the change, and he responded no. (*Id.* at 199-200). Once she handed him the cash, he asked for any cash under the drawer. (*Id.* at 200). Arnold testified that she told him there was nothing under the drawer because of their nightly-drop routine. (*Id.*). Thereafter, Arnold testified that the suspect ran out of building through the Main Street exit, and she called 911. (*Id.* at 200-201); (State's Ex. 2). The State's second witness Johnson offered nearly the identical testimony corroborating Arnold's version of the events. (*See id.* at 223-239). Importantly, the robbery was captured on a multi-camera-surveillance system with both audio and visual recordings from inside the Village Pantry, which was retrieved by law enforcement officers and presented to the jury. (*Id.* at 157, 179-182); (State's Ex. 1).

{¶37} Considering the specific facts of this case, we do not find that Morrissey's restraint of Arnold and Johnson was prolonged so as to demonstrate a significant independent event separate from the Aggravated Robbery offenses. *See Logan*, 60 Ohio St.2d 126, at syllabus; *See also Stall*, 2011-Ohio-5733, at ¶ 20-21. Indeed, from our review of State's Exhibit 1 and the testimony of Arnold the entire incident took no more than three minutes. Morrissey moved the women only a few feet out of the office, through an open door to the area directly behind the check-out counter in order to have them open the cash registers. Both offenses had a similar import, were committed as one act with the same motivation. Consequently, in our view the Kidnapping of Arnold and Johnson was "merely incidental" to the crime of Aggravated Robbery. *See id.* Moreover, we do not say Morrissey's movement of Arnold and Johnson was "substantial so as to demonstrate a significance independent of" the Aggravated Robbery offenses. *See id.*

{¶38} Accordingly, we conclude that the Aggravated Robbery and Kidnapping offenses of which Morrissey was convicted were allied offenses of similar import. Consequently, the trial court erred by not merging Counts One and Two (involving Arnold) and Counts Three and Four (involving Johnson) for purposes of sentencing.

{¶39} For the foregoing reasons, the judgment of the Hardin County Common Pleas Court is affirmed in part and reversed in part, and the matter is

remanded to the trial court for further proceedings consistent with our disposition

of the third assignment of error.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/jlr**