[Cite as *State v. Daniels*, 2024-Ohio-1536.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

KENJI DANIELS,

    DEFENDANT-APPELLANT.

CASE NO. 3-23-35

O P I N I O N

Appeal from Crawford County Common Pleas Court
Trial Court No. 22-CR-0030

Judgment Affirmed

Date of Decision:  April 22, 2024

APPEARANCES:

    *Tyler Naud Jechura* for Appellant

    *Daniel J. Stanley* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Kenji M. Daniels ("Daniels") appeals the judgment of the Crawford County Court of Common Pleas, alleging his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} At 1:45 A.M. on January 29, 2022, Officer Devin Wireman ("Officer Wireman") of the Bucyrus Police Department observed a driver fail to comply with a stop sign. Daniels was later identified as the driver of the vehicle. Officer Wireman activated his lights to initiate a traffic stop, but the vehicle continued to drive through several streets. Eventually, the vehicle slowed down, and Daniels "bailed out." (Tr. 99).

{¶3} However, without a driver, the vehicle continued to go down the road towards some houses. While engaging in efforts to stop the vehicle, Officer Wireman informed dispatch where the driver was headed on foot. After securing the vehicle, Officer Wireman noticed "marijuana, blunt wrapping * * *," and "a large amount of cash over the seats and console area." (Tr. 107).

{¶4} Patrolman Andey Plummer ("Patrolman Plummer") was in the vicinity and received Officer Wireman's description of Daniels. Patrolman Plummer testified that he observed Daniels walking in a wooded area; that he

-2-

ordered him to stop; but that Daniels began running in the opposite direction. Patrolman Plummer then pursued Daniels on foot and was eventually able to bring him into custody. Officer Wireman then arrived on the scene in addition to several other officers.

{¶5} Patrolman Plummer testified that, while Daniels was being searched, he "kept tensing up and would not allow [the police] * * * to search him properly." (Tr. 152). After Daniels was secured, Patrolman Plummer went to search the area of the woods through which he had pursued Daniels. Because the ground was covered with snow, he was able to retrace their footprints. In this process, he located a package of marijuana near the footprints.

{¶6} Officer Wireman then transported Daniels to the Crawford County Jail. On entering the facility, Daniels was subject to a "[p]at down procedure" in which his clothes and person were searched for contraband. (Tr. 190). Daniels also went through a body scanner. However, no contraband was located during these preliminary examinations. Deputy Kevin Moser ("Deputy Moser") of the Crawford County Sheriff's Office then brought Daniels to the shower room for a more extensive search.

{¶7} Once in this room, Daniels removed his clothing, placing his underwear, socks, and shirt onto a bench. At this time, Deputy Moser noticed a piece of toilet paper stuck to Daniels above his anal cavity. The toilet paper fell

from Daniels to the ground. Shortly thereafter, Deputy Moser noticed a small baggie on the floor and directed Daniels to move to the other side of the room. On seeing the baggie, Daniels "reached down" and "grabbed the bag * * *." (Tr. 181). A struggle began as Deputy Moser tried to stop Daniels as he was reaching towards the toilet in the room. Deputy Moser believed that the baggie went into the toilet. Against efforts to restrain him, Daniels was able flush the toilet.

{¶8} Hearing the altercation, Deputy Brad Beebe ("Deputy Beebe") and Deputy Linda Butler ("Deputy Butler") entered the shower room. Deputy Moser informed them that he "believed that he seen him flush contraband * * *." (Tr. 218). While Deputy Beebe assisted with the process of handcuffing Daniels, Deputy Butler checked the toilet but did not see any contraband in the water. She noticed that the toilet had been flushed and was refilling.

{¶9} Deputy Butler also noticed a baggie that was located on top of Daniels's underwear and took this item to a secure location. The contents of the baggie were later tested and found to contain 5.39 grams of para-fluorofentanyl. Deputy Beebe testified that, when Daniels was asked to explain his actions, he said "that he was trying to flush trash." (Tr. 219).

{¶10} On February 1, 2022, Daniels was indicted on one count of illegal conveyance of drugs of abuse onto grounds of a specified government facility in violation of R.C. 2921.36(A)(2), a third-degree felony; one count of tampering with

-4-

evidence in violation of R.C. 2921.12(A)(1), a third-degree felony; one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), a third-degree felony; and one count of resisting arrest in violation of R.C. 2921.33(A), a second-degree misdemeanor.[1]  These charges formed the basis of Case No. 22-CR-30.

{¶11} On April 12, 2022, Daniels was indicted on one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), (C)(11)(c), a third-degree felony.  This charge became the basis of Case No. 22-CR-106.  Since the charges were related, the State filed a motion to consolidate these cases.  The trial court granted this motion, directing that further filings should be received in Case No. 22-CR-30.  A jury trial on these charges commenced on July 19, 2023.  The jury returned verdicts of guilty on all five counts against Daniels.  The trial court issued its judgment entry of sentencing on July 25, 2023.

*Assignment of Error*

{¶12} Daniels filed his notice of appeal on August 14, 2023.  In his brief, he raises the following assignment of error:

> **The trial court abused its discretion when it convicted Mr. Daniels.  The conviction of Mr. Daniels was against the manifest**

---

[1] This indictment also charged Daniels with one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony and one count of assault in violation of R.C. 2903.13(A), a fifth-degree felony. However, on June 16, 2022, the trial court granted the State's motion to dismiss the count of felonious assault. On June 1, 2023, the trial court granted Daniels's motion to sever the count of assault for the purpose of allowing this charge to proceed in a separate case.

**weight of the evidence introduced. Further, the evidence that was introduced was insufficient to support the conviction.**

Daniels challenges his convictions for possession of a fentanyl-related compound; illegal conveyance of drugs of abuse onto grounds of a specified government facility; and tampering with evidence. For the sake of clarity, we will examine the former two convictions in one analysis before we consider his conviction for tampering with evidence under a separate analysis.

*Legal Standard*

**{¶13}** A sufficiency-of-the-evidence analysis examines whether the State has carried its burden of production at trial. *State v. Richey*, 2021-Ohio-1461, 170 N.E.3d 933, ¶ 16 (3d Dist.). On review, an appellate court is not to consider whether the evidence at trial should be believed but whether the evidence, if believed, could provide a legal basis for the finder of fact to conclude that the defendant is guilty of the crime charged. *State v. Smith*, 2023-Ohio-3015, 223 N.E.3d 919, ¶ 19 (3d Dist.). Accordingly, the applicable standard "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 62 (3d Dist.).

**{¶14}** In contrast, a manifest-weight analysis examines whether the State has carried its burden of persuasion at trial. *State v. Wilson*, 2022-Ohio-504, 185 N.E.3d 176, ¶ 58 (3d Dist.). On review, "an appellate court's function * * * is to determine

whether the greater amount of credible evidence supports the verdict." *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 12, quoting *Plott* at ¶ 73.

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, 104 N.E.3d 202, ¶ 36 (3d Dist.), quoting *Plott* at ¶ 73, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997).

{¶15} While an appellate court sits as a "thirteen juror" in this analysis, it must still "allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 37-38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119, quoting *Thompkins* at 387.

*Analysis for Possession and Illegal Conveyance Convictions*

{¶16} To establish a conviction for possession of a fentanyl-related compound as a third-degree felony, the State must prove that the defendant "knowingly obtain[ed], possess[ed], or use[d] a controlled substance or a controlled

substance analog" in a quantity that "equals or exceeds five grams but is less than ten grams." R.C. 2925.11(A)(1), (C)(11)(c). To establish a conviction for illegal conveyance of drugs of abuse onto grounds of a specified government facility, the State must prove that the defendant "knowingly convey[ed] * * * onto the grounds of a detention facility * * * any drug of abuse * * *." R.C. 2921.36(A)(2).

{¶17} On appeal, Daniels challenges both of these convictions by arguing that the State failed to establish that he was in possession of the contraband. He asserts that no trial testimony established that he "was actually in possession of the drugs * * *." (Appellant's Brief, 12). While direct evidence was not introduced to substantiate this element, the State did produce circumstantial evidence to establish that Daniels had been in possession of the contraband.

{¶18} "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting Black's Law Dictionary (5 Ed. 1979). "Circumstantial evidence has no less probative value than direct evidence." *State v. Morrissey*, 3d Dist. Hardin No. 6-21-02, 2021-Ohio-4471, ¶ 19.

{¶19} In this case, Deputy Moser testified that he observed a piece of toilet paper stuck to Daniels's body above his anal cavity. For this reason, he had Daniels

perform a "squat and cough" exercise. (Tr. 179). This process relaxes the muscles and will generally cause items in this area of the body to be released. At this time, Deputy Moser only saw the toilet paper, but shortly thereafter, he noticed a baggie on the floor of the shower room.

{¶20} Deputy Moser's testimony indicates that, when he enters the shower room, he "check[s] the floors making sure there is nothing on the floor * * *." (Tr. 180). His testimony also indicates that this baggie was not present when he entered the shower room and conducted his initial inspection of the floor. He stated that the shower room is not a high traffic area. Further, when Daniels noticed the baggie on the floor, he immediately grabbed this item. He then sought to flush this baggie down the toilet while he was engaged in a struggle with Deputy Moser. The fact that Daniels sought to dispose of the baggie strongly suggests that he was aware that its contents were incriminating.

{¶21} Additionally, Deputy Butler located the baggie containing the contraband on top of Daniels's underwear. Deputy Moser had not searched Daniels's underwear, shirt, and socks before the baggie was discovered in that area. Having reviewed the evidence in a light most favorable to the prosecution, we conclude that this testimony provided sufficient evidence to establish the possession element of these two challenged convictions. *See also State v. Stringer*, 4th Dist. Scioto No. 97 CA 2506, 1997 WL 603389, *4 (Sept. 29, 1997).

{¶22} We turn now to examining Daniels's manifest-weight challenges. At trial, Deputy Moser testified that he was not sure where Daniels stored the drugs prior to the baggie being on the floor. Deputy Beebe was presented with copies of the body-scan images that were taken when Daniels entered the jail and identified an abnormality that appeared as a white line in between Daniels's legs. He stated that this means that "objects" could be there. (Tr. 227). Since he could not recall what Daniels was wearing that night, Deputy Beebe could not determine whether this white line was a zipper or another object.

{¶23} On cross-examination, Deputy Beebe was asked about what happens when a body-scan image indicates a person might have an object concealed on his or her person. He indicated that such a person would be taken into a dry cell with no toilet access for examination rather than into the shower room. Further, the Defense called Sergeant Chris Eicher ("Sergeant Eicher") as a witness. He testified that he reviewed the body-scan images; concluded that no abnormalities were visible; and testified that Daniels was wearing pants that had a zipper on the date of his arrest. He also indicated that, in spite of the body scanning procedures, not all contraband is kept out of the jail.

{¶24} Having examined the record, we find no indication that the jury lost its way and returned verdicts on these two counts that were against the manifest weight of the evidence. For this reason, Daniels has failed to establish that the

evidence presented at trial weighs heavily against his convictions for possession of a fentanyl-related compound and for illegal conveyance of drugs of abuse onto grounds of a specified government facility.

*Analysis for Tampering with Evidence*

{¶25} To establish a conviction for tampering with evidence in violation of R.C. 2921.12(A)(1), the State must prove that the defendant, "knowing that an official proceeding or investigation [was] * * * in progress, or is about to be or likely to be instituted, * * * [a]lter[ed], destroy[ed], conceal[ed], or remove[d] any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). On appeal, Daniels argues that the State failed to establish that he altered or destroyed the contraband.

{¶26} At trial, Deputy Moser testified that Daniels picked up a baggie on the floor and immediately went in the direction of the toilet. He further stated that they struggled while Daniels had the baggie in his hand and reached to flush the toilet. Deputy Moser testified that he was not sure "at what point [during the struggle] it [the baggie] went into the toilet." (Tr. 199). However, he affirmed that he "kn[e]w if [Daniels] was successful in flushing bags" and that Daniels "g[ot] rid of that bag." (Tr. 205). Deputy Beebe testified that, when he entered the shower room, Deputy Moser told him that "he seen him [Daniels] flush contra band [sic] at that time." (Tr. 218). Deputy Butler testified that she then checked the toilet bowl but could

not see any contraband in the toilet. Rather, the toilet had been recently flushed and was refilling at that time.

{¶27} Having reviewed the evidence in a light most favorable to the prosecution, we conclude that this testimony provided some evidence from which the jurors could conclude that Daniels "[a]lter[ed], destroy[ed], conceal[ed], or remove[d]" evidence within the meaning of R.C. 2921.12(A)(1). Daniels also challenges his conviction for tampering with evidence by again arguing that the State failed to establish that he was in possession of the drugs. However, we have already addressed this issue in our prior analysis and, for the aforementioned reasons, again find this argument to be without merit. For these reasons, we conclude that Daniels has not demonstrated that his conviction for tampering with evidence is unsupported by sufficient evidence.

{¶28} We turn now to examining Daniels's manifest-weight challenge. Sergeant Eicher affirmed that Deputy Moser had reportedly "smacked something out of Mr. Daniels' hands[.]" (Tr. 275). Deputy Moser testified that he could not recall making this comment but stated that he was "sure that [he] * * * tried to" smack the baggie out of Daniels's hands as they were struggling above the toilet. (Tr. 201). He also indicated that he was not certain whether the baggie he saw on the floor "was the bag that was ultimately tested or [whether] the bag on the floor was ultimately flushed[.]" (Tr. 187). Deputy Moser also testified that he was not

sure if Daniels had brought two separate baggies into the facility but affirmed that he knew Daniels "was successful in flushing bags." (Tr. 205).

{¶29} Having examined the record, we have found no indication that the jury lost its way and returned a verdict on the count of tampering with evidence that was against the manifest weight of the evidence. For this reason, Daniels has failed to establish that the evidence presented at trial weighs heavily against his conviction for tampering with evidence. Accordingly, his sole assignment of error is overruled.

*Conclusion*

{¶30} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Crawford County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WALDICK and MILLER, J.J., concur.**

**/jnc**