[Cite as *State v. Morris*, 2016-Ohio-5490.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :        APPEAL NO. C-150421
                                                 TRIAL NO. B-1403375
    Plaintiff-Appellee,             :
                                                 *O P I N I O N.*
  vs.                                   :

ANTHONY MORRIS,                         :

    Defendant-Appellant.            :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Vacated in Part, and Appellant
                    Discharged in Part

Date of Judgment Entry on Appeal:  August 24, 2016


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Marguerite Slagle*, Assistant Public Defender, for Defendant-Appellant.

**DEWINE, Judge.**

{¶1} Anthony Morris was convicted of multiple counts of kidnapping and aggravated robbery and one count of felonious assault. The charges involved two victims, both of whom ultimately jumped from a balcony in an attempt to escape. Mr. Morris raises several issues on appeal, only one of which we find to have merit. In order to convict Morris for one of the aggravated-robbery counts, the state had to show he recklessly *inflicted* or attempted to *inflict* serious physical harm. Here, the injury upon which that count was premised occurred as a result of the victim's jump from the balcony. We conclude that Morris did not "inflict" the injury that occurred when the victim jumped in an attempt to escape. Thus, we must vacate one of the aggravated-robbery convictions. We affirm the trial court's judgment in all other respects.

## I.    Background

{¶2} The incident began when Morris approached the victims, Keith Gates and Camber Lawson, at a grocery store and offered to sell them marijuana. Mr. Gates agreed to follow Morris to a house to do the deal. After parking, Mr. Gates gave Morris $10 through his car window. Explaining that he did not have the drugs on him, Mr. Morris told Gates they would have to go to a house down the street. When Gates refused and asked for his money back, Mr. Morris produced a large knife and ordered Gates to follow him. Ms. Lawson ignored Gates's advice to remain in the car and went with the two men into the house.

{¶3} Mr. Morris directed them to a second-floor apartment and told them to sit on the couch. As Gates and Lawson sat on the couch, two other men entered the room and began discussing more drug sales. While they talked, Mr. Morris was pacing in and out of the room. Suddenly, Mr. Morris jumped on top of Gates, held the knife to

his throat and demanded money. When Gates resisted, Mr. Morris said, "Just listen to me. Do what I say." Mr. Gates told Morris the money was in his car, so Morris took the keys from Gates's pocket. Before going to Gates's car to get the money, Mr. Morris told Gates and Lawson not to leave, threatening that they would not like what would happen if they did. The two other men in the room advised listening to Morris, explaining that he was "crazy." Once Morris left, Mr. Gates went to the balcony where he saw a police officer driving down the street. He was unable to get the officer's attention so he jumped from the balcony. After he jumped, he saw Lawson fall to the ground behind him. Ms. Lawson later explained that she had jumped because she had panicked when she saw Morris hold a knife to Gates's throat and felt that her life was in danger. She suffered severe injuries as a result of her jump.

{¶4} Mr. Morris was charged with two counts of kidnapping for each victim, one count of felonious assault as to Lawson and two counts of aggravated robbery—one for brandishing a deadly weapon (a knife) while committing a theft and one for recklessly inflicting or attempting to inflict serious physical harm on Lawson while committing a theft. A jury found him guilty of all seven counts. The court merged the kidnapping counts for each victim so that Morris stood convicted of two counts of kidnapping, two counts of aggravated robbery and one count of felonious assault. The court imposed consecutive sentences for all the counts for an aggregate term of 24 years.

## II. Sufficiency of the Evidence

{¶5} In his first assignment of error, Mr. Morris argues that three of his convictions were not supported by sufficient evidence. He claims that the conviction for kidnapping Lawson fails because the state did not show that he had removed Lawson

from the car by force or deception.[1]  He also challenges the sufficiency of the evidence of felonious assault because the state failed to show he caused Lawson serious physical harm.  Finally, he contends he could not be convicted of one of the counts of aggravated robbery because the state did not prove he had inflicted serious physical harm on Lawson.  We consider each conviction in turn.

### A. Kidnapping

{¶6}     To convict Morris of kidnapping Lawson, the state was required to show that he removed or restrained her by force, threat or deception for the purpose of committing a felony.  *See* R.C. 2905.01(A)(2).  Mr. Morris insists the kidnapping conviction charged in count one of the indictment was insufficient because the state failed to prove he removed Lawson from the car by force or deception.  Indeed, Ms. Lawson testified that she willingly got out of the car and went into the house.

{¶7}     If the offense had stopped when Lawson followed Morris and Gates into the apartment, he would have a strong argument that the evidence was insufficient to establish the force or deception element required by the kidnapping statute.  But it didn't stop there.   Once Lawson was inside the apartment, Mr. Morris restrained her on the second floor.  A victim is restrained when her freedom of movement is limited in any fashion for any period of time.  *State v. Grant*, 1st Dist. Hamilton No. C-971001, 2001 Ohio App. LEXIS 1388, *32 (March 23, 2001).  "[M]erely compelling a victim to stay where he is constitutes restraint."  *Id.* at *32-33.  Mr. Gates testified that once they were in the upstairs bedroom, Morris ordered them to sit on the couch.   Ms. Lawson testified that after they sat down Morris locked the apartment door.  He then used a knife to threaten and assault Gates as Lawson sat nearby on the couch.  Mr. Gates stated that

---

[1] In his brief, Mr. Morris challenges convictions under both counts of kidnapping Lawson, but he was convicted of only one—count one.  The court merged the counts.

Morris warned them not to leave, and that the other two men in the house told them to listen to Morris because he was "crazy." Ms. Lawson explained that she was afraid and felt that her life was threatened. This evidence was sufficient to establish Morris restrained Lawson by force or threat.

### B. Felonious Assault

{¶8} Mr. Morris also claims that the evidence was insufficient to support his felonious-assault conviction. The state was required to prove that Morris knowingly caused serious physical harm to Lawson. *See* R.C. 2903.11(A)(1). As Morris sees it, the state could not prove he "knowingly caused" Lawson's injuries because they resulted from her voluntary decision to jump off of the balcony.

{¶9} Knowingly, as differentiated from purposely, does not require the offender to have the specific intent to cause a certain result. R.C. 2901.22(A) and (B); *see State v. Dixon*, 8th Dist. Cuyahoga No. 82951, 2004-Ohio-2406, ¶ 16. A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). An accused is presumed to intend the natural, reasonable and probable consequences of his voluntary acts. *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978).

{¶10} Both Mr. Gates and Ms. Lawson testified that Morris held a knife to Gates's throat and demanded money. They were warned not to leave, which was reinforced by the other two men in the house. When she saw Gates jump off of the balcony, Ms. Lawson tried to think of what to do. She was scared and did not want to be in the apartment anymore, so she jumped off of the balcony after Gates. Ohio courts have found an effort to escape to be a "natural consequence" of being held hostage.

5

*State v. Bromley*, 9th Dist. Lorain Nos. 93CA005738 and 93CA005739, 1994 Ohio App. LEXIS 2707 (June 22, 1994); *State v. Jarvis*, 9th Dist. Lorain No. 14CA010667, 2015-Ohio-4219, ¶ 16; *see State v. Jackson*, 8th Dist. Cuyahoga No. 80879, 2002-Ohio-5851, ¶ 60 ("one consequence of holding an individual at gunpoint is escape"). Ms. Lawson feared for her life. It was perfectly reasonable for her to try to escape her captor after being threatened with a deadly weapon and future violence. Because Lawson's injuries were sustained while attempting to escape, we find that the state adduced sufficient evidence that Morris knowingly caused her serious physical harm in order to sustain the felonious-assault conviction.

### C. Aggravated Robbery

{¶11} Mr. Morris again focuses on Lawson's voluntary jump from the balcony in his challenge to the aggravated-robbery count involving her injury. To find Morris guilty of aggravated robbery, the state needed to show that Morris recklessly inflicted or attempted to inflict serious physical harm on Lawson while committing or attempting to commit a theft offense. *See* R.C. 2911.01(A)(3) and 2901.21(C)(1). Mr. Morris argues that the evidence was insufficient to sustain his conviction for the aggravated robbery involving the harm to Lawson because the state failed to show that he "inflicted" the harm that was occasioned by her jump from the balcony. We agree.

{¶12} "Inflict" is not defined in the Ohio Revised Code, so we apply its plain and ordinary meaning. *See Chari v. Vore*, 91 Ohio St.3d 323, 327, 744 N.E.2d 763 (2001); R.C. 1.42. "Inflict" means "to give by[,] or as if by[,] striking." Merriam-Webster Online, available at http://www.merriam-webster.com/dictionary/inflict?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (accessed August 4, 2016). The legislature's use of the word "inflict," instead of "cause," indicates that something more than but-for causation is required to prove the harm element of

aggravated robbery under R.C. 2911.01(A)(3). The word "inflict" "implies some direct action by one person upon another." *State v. Bates*, 10th Dist. Franklin No. 97APA02-171, 1997 Ohio App. LEXIS 5411, *12 (Dec. 2, 1997); *see State v. Laurence*, 3d Dist. Crawford No. 3-14-05, 2015-Ohio-1891, ¶ 28.

{¶13} Thus, in *Bates*, the Tenth Appellate District concluded that the evidence was insufficient to support an aggravated-robbery conviction where the injury (a severe laceration to the victim's arm) resulted from the victim punching at the defendant through a broken window. *Bates* at *14. The court reasoned that the victim's injury was caused indirectly by the defendant as opposed to any direct action of the defendant upon the victim. *Id.*

{¶14} Likewise, we conclude that Lawson's injuries were not caused by any direct action on the part of Morris. Rather, they happened indirectly as a result of her jump. When considering a sufficiency claim, we must determine, after viewing the evidence in the light most favorable to the state, whether a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We find the state did not present sufficient evidence that Morris inflicted harm on Lawson. Morris's first assignment of error is sustained as to the aggravated-robbery conviction charged in count six of the indictment and overruled in all other respects.

### III. Merger

{¶15} In his second assignment of error, Mr. Morris argues that the trial court erred when it failed to merge the count for kidnapping Gates with the count for aggravated-robbery with a deadly weapon. Because he did not object below, Mr. Morris waived all but plain error. *See* Crim.R. 52(B).

{¶16} Under R.C. 2941.25(B), a defendant may be convicted of multiple offenses arising from the same conduct if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus.

{¶17} Commission of an aggravated robbery necessarily involves at least a brief restraint of the victim. *State v. Jenkins*, 15 Ohio St.3d 164, 198, 473 N.E.2d 264 (1984), fn. 29 (a kidnapping is implicit within every aggravated robbery); *State v. Chaffer*, 1st Dist. Hamilton No. C-090602, 2010-Ohio-4471, ¶ 11. The Ohio Supreme Court has recognized that the primary question when determining whether kidnapping merges with another offense "is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." *State v. Logan*, 60 Ohio St.2d 126, 135, 397 N.E.2d 1345 (1979). "Thus, when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime." *Grant*, 1st Dist. Hamilton No. C-971001, 2001 Ohio App. LEXIS 1388 at *16. But where the restraint is prolonged, the confinement is secretive or the movement is substantial, the kidnapping and aggravated robbery are committed with a separate animus. *Id.*

{¶18} Here, the restraint of Gates was prolonged. Mr. Morris persuaded Gates to follow him from the grocery store to carry out a drug deal. He then ordered Gates out of his car, up the stairs and into the house at knifepoint. After keeping Gates in the house, Mr. Morris held a knife to Gates's throat demanding money. He further restrained Gates with the threat of violence before leaving with Gates's keys. Mr. Morris

detained Gates far longer than the time necessary to complete the aggravated robbery. We find Morris's prolonged restraint of Gates, both before and after retrieving the keys from Gates's pocket, demonstrates a separate animus for the kidnapping offense. *See State v. Houston*, 1st Dist. Hamilton No. C-130429, 2014-Ohio-3111, ¶ 22-23. Mr. Morris's second assignment of error is overruled.

## IV.    Ineffective Assistance

{¶19}    In his third assignment of error, Mr. Morris alleges he was denied the effective assistance of counsel because his attorney did not move for dismissal of the kidnapping charges or request merger of the kidnapping count involving Gates and the count of aggravated-robbery with a deadly weapon. For the reasons explained above, neither argument would have been successful. As a consequence, we overrule the third assignment of error. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 199.

## V.    Conclusion

{¶20}    We vacate Morris's conviction for aggravated robbery involving the harm to Lawson as charged in count six of the indictment, and we discharge Morris from further prosecution on that count. In all other respects, the judgment of the trial court is affirmed.

Judgment accordingly.

**HENDON, P.J.**, concurs.
**MOCK, J.**, concurs in part and dissents in part.

**MOCK, J.**, concurring in part and dissenting in part.

{¶21}    While I agree with the analysis of most of the majority opinion, I cannot agree with the determination that Morris's conduct did not constitute the crime of

9

aggravated robbery. The aggravated-robbery statute under which he was charged required a showing that Morris recklessly inflicted or attempted to inflict serious physical harm on Lawson. *See* R.C. 2911.01(A)(3). But while we have concluded that it was perfectly reasonable for her to attempt to escape, such that her injuries were "knowingly caused" by Morris for the purposes of felonious assault, we conclude that it is legally impossible for that same conduct to have recklessly inflicted those same injuries.

{¶22} I understand the logical appeal of following the 1997 decision from the Tenth Appellate District. *See Bates*, 10th Dist. Franklin No. 97APA02-171, 1997 Ohio App. LEXIS 5411 at *12-13. But I have found no other case in Ohio that has cited *Bates* for the proposition that "inflict connotes more than simple 'but for' causation, but implies some direct action by one person upon another," and thereafter used that analysis to discharge a defendant.

{¶23} The second definition of "inflict" listed on the Merriam Webster website indicates that the word also means "to cause (something unpleasant) to be endured." Merriam-Webster Online, available at http://www.merriam-webster.com/dictionary/ inflict (accessed August 16, 2016). Lawson suffered devastating physical injuries as a result of attempting to flee from the precarious position that Morris put her in, an attempt that we have concluded was reasonable and foreseeable. He set these events in motion, and the connection between his conduct and her serious injuries is not so attenuated that we can say that the injuries were not recklessly inflicted as a matter of law.

{¶24} I therefore respectfully dissent from the majority's analysis and determination of that portion of the first assignment of error. I agree with the opinion in all other aspects.

10

Please note:

The court has recorded its own entry on the date of the release of this opinion.

