[Cite as *State v. Simpson*, 2025-Ohio-4797.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 0010 |
| Plaintiff - Appellee | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Coshocton County, |
| ROBERT A. SIMPSON, | Case No. 24 CR 0039 |
| Defendant - Appellant | Judgment:  Affirmed |
| | Date of Judgment:  October 20, 2025 |

BEFORE: Craig R. Baldwin; Robert G. Montgomery; David M. Gormley, Judges

APPEARANCES: Denise J. Salerno, Assistant Attorney General, for Plaintiff-Appellee; E. Marie Wheeler, Assistant Public Defender, for Defendant-Appellant.

*Gormley, J.*

{¶1}   Defendant Robert Simpson argues in this appeal that the trial court erred by refusing to instruct the jury on self-defense at Simpson's trial on criminal charges of assault and obstructing official business.  For the reasons explained below, we affirm the judgment of the trial court.

**The Key Facts**

{¶2}   Simpson — who is legally blind due to a degenerative eye disease — testified at his trial.  When describing the events that gave rise to the criminal charges, Simpson told the jurors that he had gone to Coshocton City Hall to explore that building's history and that he used his phone to record his surroundings.  Though he sometimes

uses a cane to get around, Simpson testified that he was not using one that day and did not indicate to anyone he encountered that he was legally blind.

{¶3} When Simpson entered the tax office inside the building, his cell phone's video and audio recording function was activated. After he said aloud that he was there to take some pictures and videos, the workers in the tax office informed Simpson that he could not record there due to the confidential nature of the documents in that office. Simpson nonetheless continued to record, and he told the tax-office staff that he was exercising his right to take pictures and videos in public places.

{¶4} A deputy from the Coshocton County Sheriff's Office was on duty in City Hall that day, and a city employee called that deputy when Simpson refused to stop recording and photographing inside the tax office. Once the deputy arrived, he identified himself as a deputy from the sheriff's office and instructed Simpson to leave the building or be arrested. The deputy repeated his request several times, and when Simpson did not comply, the deputy put one hand on Simpson's shirt and one hand on Simpson's pants and began directing him forcefully toward an exit.

{¶5} A building-security camera captured what happened next, and video from that camera — and from Simpson's cell phone — was introduced at the trial. The deputy pushed Simpson toward a stairway and then paused at the top of the stairs. There, the deputy said that he was placing Simpson under arrest, and the deputy instructed Simpson to place his hands on a nearby wall.

{¶6} After the deputy completed a pat-down search of Simpson, the deputy directed a nearby city employee to "call 911 and tell them to send a deputy." Before any other law-enforcement officers arrived, though, Simpson removed his hands from the

wall, turned around, and began wrestling with the deputy who was arresting him. That deputy ended up on the floor at the top of the stairs. Once another deputy arrived, the two deputies completed the arrest of Simpson.

**{¶7}** At Simpson's trial, the judge denied Simpson's request for a jury instruction on self-defense. Simpson was then convicted by the jury on one count of assault on a peace officer (a fourth-degree felony) and one count of obstructing official business (a fifth-degree felony). He now challenges the trial judge's decision on the jury-instruction issue.

## Standard of Review

**{¶8}** "A trial court has broad discretion to decide how to fashion jury instructions, but it must fully and completely give the jury all instructions" that are "relevant and necessary for the jury to weigh the evidence and discharge its duty." *State v. Ellis*, 2025-Ohio-2535, ¶ 33 (5th Dist.) (quotations omitted). When reviewing a trial court's decision about jury instructions, we apply an abuse-of-discretion standard. *State v. Palmer*, 2024-Ohio-539, ¶ 16, citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). An abuse of discretion is "'more than an error of law or judgment'" and implies that the trial court's attitude was "'unreasonable, arbitrary[,] or unconscionable.'" *Wolons* at 68, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

## The Trial Court Did Not Err by Refusing to Instruct the Jury on Self-Defense

**{¶9}** Requested jury instructions should ordinarily be given if "they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion" sought by the party requesting the instructions. *State v. Adams*, 2015-Ohio-3954, ¶ 240, citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585,

591 (1991). A trial judge is in the best position to gauge the evidence presented to the jury and is entitled to exercise discretion when determining if that evidence justifies the giving of any particular instruction. *State v. Fulmer*, 2008-Ohio-936, ¶ 72.

{¶10} Under R.C. 2901.05(B)(1), anyone is allowed to use force in self-defense. When a defendant charged with a crime involving the use of force claims that he or she used that force in self-defense, that defendant at his or her trial bears the initial burden of showing that legally sufficient evidence that "tends to support" the claim has been presented. R.C. 2901.05(B)(1); *State v. Messenger*, 2022-Ohio-4562, ¶ 22, 25. A defendant meets that burden of production if the "evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant." *Messenger* at ¶ 25. If the defendant meets that initial burden, the prosecution must then disprove self-defense beyond a reasonable doubt. *Id.* at ¶ 24.

{¶11} To support a self-defense claim involving the use of non-deadly force, the defendant must be able to point to some evidence tending to support the view that he or she (1) was not at fault in creating the situation that led to the affray, (2) had reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm. *State v. Asp*, 2023-Ohio-290, ¶ 55 (5th Dist.), citing *State v. Paskins*, 2022-Ohio-4024, ¶ 48 (5th Dist.).

{¶12} To be sure, a defendant's burden of showing, under R.C. 2901.05(B)(1), that evidence has been presented that "tends to support" a self-defense claim "is not a heavy one and . . . might even be satisfied through the state's own evidence." *Messenger*

at ¶ 22. This case, though, involved one additional complication for the defense: the alleged victim was a law-enforcement officer. Even had the trial judge given the jury a self-defense instruction as Simpson requested, the judge would almost certainly have explained to the jury, too, that "[u]nless an arresting officer uses excessive or unnecessary force, a private citizen may not use force to resist arrest by an authorized police officer, regardless of whether the arrest is illegal." *Asp* at ¶ 61; *see also City of Columbus v. Fraley*, 41 Ohio St.2d 173 (1975), paragraph three of the syllabus ("In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties").

{¶13} After carefully reviewing the record, we see no evidence that the deputy who was the alleged victim of Simpson's alleged assault offense employed excessive or unnecessary force against Simpson in the moments before Simpson knocked him to the floor. The video footage of the incident shows that the deputy was keeping just one hand on Simpson's back to hold him in place against the wall while that deputy waited for a colleague to arrive. On cross examination, Simpson answered "correct" to the question that "at the point that you decided to do martial arts on the deputy, your hands had already been on the wall and there was no pushing, nobody was pushing you down the stairs, nobody was pushing you anywhere at that point, right?" And no testimony from Simpson or any other witness suggested that the deputy was using unnecessary or excessive force before the assault.

**{¶14}** Even after drawing in Simpson's favor all reasonable inferences from the evidence, we cannot rightly say that a rational trier of fact would have found in this case that Simpson acted in self-defense against his law-enforcement-officer victim.

**{¶15}** Keeping in mind that the trial judge was in the best position to gauge the evidence presented at trial and determine if that evidence was sufficient to require an instruction, we see no abuse of discretion in the trial judge's decision to deny Simpson's request for a self-defense jury instruction in this case.

**{¶16}** The judgment of the Court of Common Pleas of Coshocton County is affirmed.  Costs are to be paid by appellant Robert Simpson.


By: Gormley, J.;

Baldwin, P.J. and

Montgomery, J. concur.