[Cite as *State v. Jones*, 2026-Ohio-987.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

LANDON Q. JONES,

    DEFENDANT-APPELLANT.

CASE NO. 9-25-24

OPINION AND
JUDGMENT ENTRY

---

Appeal from Marion County Common Pleas Court
Trial Court No. 24-CR-370

Judgment Affirmed

Date of Decision:  March 23, 2026

---

APPEARANCES:

    *Olivia R. Rancour* for Appellant

    *T. Parker Schwartz, II* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Landon Q. Jones ("Jones") appeals the judgment of the Marion County Court of Common Pleas, arguing that the trial court should have given a jury instruction on the use of non-deadly force in self-defense; that his conviction is not supported by sufficient evidence; and that his conviction is against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On October 25, 2024, Jones was brought to the Multi County Correctional Center ("MCCC") in Marion County after he had violated the terms of his post-release control. While at the jail, Jones learned that he would not be released in time to attend his son's football game that evening. He stated that, in response to this news, he was "inconsolable" and affirmed that he eventually became "angry and mad[.]" (Tr. 225, 239). He then began to scream and curse as he was "balling up [his] . . . fists" and pacing across the room. (Tr. 240). At this time, Jones was one of roughly twenty inmates who were located in Dorm Room B ("Dorm B").

{¶3} Corrections Officer Nicholas Wall ("Officer Wall") later testified that, when a person was causing a disturbance, the protocol was to escort that person from a dorm room with other inmates to a visitation room where he or she could

calm down privately.  He explained that this protocol sought to prevent the situation from escalating or involving other inmates.  On hearing Jones yelling, Officer Wall and Corrections Officer Ortiz ("Officer Ortiz") sought to address this disturbance. They entered Dorm B, approached Jones, and walked with him towards the door. In a recording from his body camera, Officer Wall can be heard telling Jones to "take deep breaths" as they walked out of the room.  (Ex. 1, 3).

{¶4} When they entered the main hallway, Jones was in front of Officer Wall and Officer Ortiz as they went in the direction of the visitation room.  Officer Wall testified that, at this point, Jones's behavior—his "yelling" and "huffing"— intensified. (Tr. 160).  As Jones's screams got louder, Officer Wall directed him to "stop yelling."  (Ex. 3).  Jones then turned and began walking towards the two corrections officers in an "aggressive manner" as he continued to speak in a raised voice. (Tr. 180).  As Jones got closer, Officer Wall stated, "Don't turn towards me," as he began to turn Jones away from him.  (Ex. 3).

{¶5} Seeing that Jones "was agitated," Officer Wall moved him towards the wall and sought to put handcuffs on him to ensure "their safety."  (Tr. 161).  In security camera footage from the main hallway, Jones can be seen pushing himself away from the wall and shoving Officer Wall across the hallway.  Officer Wall indicated that, as they continued to scuffle, he swung his closed fist at Jones but failed to make contact with him.  In response, Jones shoved Officer Wall across the

hallway and into the wall as they struggled. Jones then swung an open hand at Officer Wall and made contact with his head.

{¶6} Officer Ortiz then used pepper spray on Jones and helped Officer Wall bring Jones to the ground. Two other corrections officers then entered the hallway to assist Officer Wall and Officer Ortiz. By the time Lieutenant Kyle Shope ("Lt. Shope") arrived, four other corrections officers were holding Jones down. Tr. 206. Lt. Shope testified that Jones continued to struggle until he was informed that he would be tased if he did not comply. After he stopped resisting, Jones "was taken to booking. . . ." (Tr. 171).

{¶7} After this incident was reported, Officer Matthew Mauldin ("Officer Mauldin") of the Marion Police Department testified that he went to the MCCC. He reviewed two body camera recordings that captured portions of the incident in addition to the security camera footage from the main hallway where the altercation had occurred. Officer Wall later reported that he had a bruised arm as the result of this altercation.

{¶8} On October 30, 2024, Jones was indicted on one count of assault in violation of R.C. 2903.13(A) as a fifth-degree felony pursuant to R.C. 2903.13(C)(4)(a). A jury trial on this charge was held on July 17, 2025. During its case-in-chief, the State played the footage from the security camera in the main hallway that captured the entire scuffle in addition to recordings from two body cameras. The State also called Officer Wall and Lt. Shope to testify.

{¶9} Jones then testified in his own defense. At the close of evidence, the trial court denied Jones's request for a jury instruction on the use of non-deadly force in self-defense. The jury then returned a verdict of guilty on the charge against Jones and found that the State proved he had committed this offense on the grounds of a local correctional facility. The trial court then issued its judgment entry of sentencing on July 21, 2025.

{¶10} Jones filed his notice of appeal on August 18, 2025. On appeal, he raises the following three assignments of error:

### First Assignment of Error

**The trial court erred and thereby deprived appellant of due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution by failing to instruct the jury on self-defense.**

### Second Assignment of Error

**The trial court erred and thereby deprived appellant of due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution by overruling appellant's Crim.R. 29 motion for judgment of acquittal as there was insufficient evidence to support a conviction.**

### Third Assignment of Error

**Appellant's convictions were against the manifest weight of the evidence and thereby violated due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

*First Assignment of Error*

**{¶11}** Jones argues that the trial court erred by denying his request for a jury instruction on the use of non-deadly force in self-defense.

Legal Standard

**{¶12}** "Jury instructions are critically important to assist juries in determining the interplay between the facts of the case before it and the applicable law." *State v. Griffin*, 2014-Ohio-4767, ¶ 5. "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 2015-Ohio-3954, ¶ 240. However, "a trial court need not provide a requested jury instruction unless it finds that sufficient evidence was presented at trial to support giving the instruction." *State v. Stoychoff*, 2021-Ohio-4248, ¶ 9 (3d Dist.).

**{¶13}** "Self-defense is an affirmative defense whereby the defendant, in essence, admits to the facts of the state's case but offers additional facts that justify or excuse the defendant's use of force." *State v. Lewis*, 2025-Ohio-2178, ¶ 41 (6th Dist.). Under R.C. 2901.05, "a defendant claiming self-defense has the burden of production—that is, the burden of producing evidence that 'tends to support' his use of force in defending himself." *State v. Estelle*, 2021-Ohio-2636, ¶ 18 (3d Dist.). If the defendant successfully raises self-defense by carrying this initial burden of production, "the burden then shifts to the state under its burden of persuasion to

-6-

prove beyond a reasonable doubt that the defendant did not use force in self-defense." *State v. Morris*, 2024-Ohio-2960, ¶ 27 (3d Dist.).

**{¶14}** In deciding whether the defendant has carried this burden of production, "[t]he question is not whether the evidence should be believed but whether the evidence, if believed, could convince a trier of fact, beyond a reasonable doubt, that the defendant was acting in self-defense." *State v. Palmer*, 2024-Ohio-539, ¶ 21.

> Similarly to the standard for judging the sufficiency of the state's evidence, if the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden.

*State v. Messenger*, 2022-Ohio-4562, ¶ 25. The defendant's burden is "not a heavy one and . . . might even be satisfied through the state's own evidence." *Id*. at ¶ 22.

> Finally, a defendant's bare assertion that he acted in self-defense will be insufficient. . . . His assertions must be coupled with supporting evidence from whatever source and of a nature and quality sufficient to raise reasonable doubt as to guilt.

(Citations omitted.) *State v. Davidson-Dixon*, 2021-Ohio-1485, ¶ 20 (8th Dist.). "If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *State v. Miller*, 2025-Ohio-1920, ¶ 24 (4th Dist.), quoting *State v. Melchior*, 56 Ohio St.2d 15, 20 (1978).

{¶15} To be entitled to a jury instruction on the use of non-deadly force in self-defense, the Defense must produce evidence that

> (1) the accused was not at fault in creating the situation giving rise to the affray, (2) the accused (even if mistaken) had a bona fide belief that he was in imminent danger of any bodily harm; and (3) the only means to protect himself from such danger was the use of force not likely to cause death or great bodily harm.

*State v. Eddy*, 2022-Ohio-3965, ¶ 15 (3d Dist.), quoting *State v. Chavez*, 2020-Ohio-426, ¶ 40 (3d Dist.).

{¶16} In general, "[t]he 'not at fault' requirement . . . means that the defendant must not have been the first aggressor in the incident." *City of Toledo v. Klink*, 2025-Ohio-2316, ¶ 36 (6th Dist.), quoting *State v. Turner*, 2007-Ohio-1346, ¶ 23 (2d Dist.). Additionally, "[a] person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense." *Eddy* at ¶ 16, quoting *State v. Elam*, 2022-Ohio-1895, ¶ 16 (12th Dist.).

{¶17} Importantly, a "heightened standard" exists when non-deadly force is used against a law enforcement officer. *State v. Shepherd*, 2006-Ohio-4315, ¶ 31 (11th Dist.).

> When the situation involves the use of force against law enforcement officers, a private citizen may not—in the absence of excessive or unnecessary force by an arresting officer—use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances.

*State v. Williams*, 2019-Ohio-5381, ¶ 14 (3d Dist.) (applying this rule in a case where an inmate was in an altercation with corrections officers). *See also Shephard*, at ¶ 31; *State v. Gloff*, 2020-Ohio-3143, ¶ 24 (12th Dist.). "The elements of self-defense are cumulative; the defendant's failure to show legally sufficient evidence raising an issue on any of the elements warrants the refusal of a self-defense instruction." *State v. Brennan*, 2024-Ohio-4687, ¶ 63 (5th Dist.).

Standard of Review

{¶18} A "trial judge is in the best position to gauge the evidence before the jury and is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 2008-Ohio-936, ¶ 72. "For this reason, appellate courts examine whether a trial court's decision not to give a requested jury instruction was an abuse of discretion given the circumstances of the case." *State v. Greenawalt*, 2025-Ohio-4906, ¶ 40 (3d Dist.).

{¶19} An abuse of discretion is not merely an error of judgment but is present where a decision is arbitrary, unreasonable, or unconscionable. *State v. Sullivan*, 2017-Ohio-8937, ¶ 20 (3d Dist.). "If the evidence adduced at trial is legally insufficient to raise the issue of self-defense, the court is not obligated to instruct the jury regarding this claim and has discretion to completely remove it from the jury's consideration." *State v. Barnd*, 85 Ohio App.3d 254, 259 (3d Dist. 1993).

Legal Analysis

**{¶20}** Jones argues that trial court erred by failing to give a jury instruction on the use of non-deadly force in self-defense. We turn to examining whether he carried his burden of production at trial. In this case, Officer Wall went into Dorm B to address a disturbance that Jones was causing by screaming, pacing, and clenching his fists. Officer Wall then began to escort Jones from Dorm B to a visitation room where he could calm down. When they entered the long hallway, Jones began to scream louder. In response, Officer Wall directed Jones to "stop yelling." (Ex. 3).

**{¶21}** While Jones asserted that he complied with Officer Wall's directive, the body camera footage shows that Jones continued to raise his voice as he turned around and walked towards the corrections officers in an "aggressive manner." (Tr. 180). Jones also asserted that he was given no further commands from Officer Wall. But as Jones neared the corrections officers, Officer Wall can be heard giving another directive in his body camera footage, saying "Don't turn towards me." (Ex. 3). While he was giving this directive, Officer Wall began to turn Jones away from him.

**{¶22}** Officer Wall then moved Jones towards the wall and sought to handcuff him. Jones admitted during his testimony that he was "angry" and "pissed" at this juncture. (Tr. 239, 246). In the security camera footage, Jones can be seen pushing off of the wall with enough force to move Officer Wall across the

hallway. At trial, Jones testified that he felt pain in his arm as Officer Wall was attempting to handcuff him and that he pushed Officer Wall to stop the pain. As he began to push Officer Wall, Jones screamed, "Get the f**k off me." (Tr. 244).

{¶23} While Jones stated that he was only trying to stop the pain in his arm, he also admitted at trial that he used enough force to "one-handed thr[o]w Officer Wall all the way across the hallway into the wall . . . ." (Tr. 246). The security camera footage also indicates that he continued to resist the corrections officers. He then shoved Officer Wall across the hallway a second time, pushing him into the wall. Jones also hit Officer Wall in the head with his open hand.

{¶24} In deciding whether to give the requested jury instruction, the trial court correctly noted that the video recordings of the incident presented "unrefuted evidence" that Jones "failed to comply" with the corrections officers. (Tr. 265). *State v. Petway*, 2020-Ohio-3848, ¶ 3, 75, 81 (11th Dist.) (upholding the denial of a requested jury instruction on self-defense where a video of the altercation established that the defendant was at fault). The trial court also pointed out that Jones approached the corrections officers "aggressively" and "with clenched fists," prompting Officer Wall to turn Jones away from him. (Tr. 264). Jones then "resist[ed]" and went "on the offensive" by shoving Officer Wall. (Tr. 266).

{¶25} After drawing all reasonable inferences in Jones's favor, we conclude that a rational trier of fact could not find from the evidence produced at trial that Jones was not at fault in creating the affray. *State v. Simpson*, 2025-Ohio-4797, ¶

14 (5th Dist.). In particular, Jones did not provide any explanation of his actions, as captured in the video recordings, that could establish that he shoved Officer Wall in self-defense. While Jones stated that he acted in self-defense, this was ultimately a bare assertion that was not supported by the evidence in the record.

**{¶26}** Since Jones did not produce evidence that "tends to support" the conclusion that he was not at fault in creating the affray, he failed to meet the burden of production required for the affirmative defense of self-defense. R.C. 2905.01(B)(1). *State v. Brennan*, 2024-Ohio-4687, ¶ 63 (5th Dist.) (Since the elements of self-defense are cumulative, the failure to establish one element means a self-defense instruction is not warranted.). Thus, we conclude that the trial court did not abuse its discretion in declining to give a jury instruction on the use of non-deadly force in self-defense. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶27}** Jones argues that his conviction for assault in violation of R.C. 2903.13(A) was not supported by sufficient evidence.

Legal Standard

**{¶28}** "A sufficiency-of-the-evidence analysis examines whether the State has carried its burden of production at trial." *State v. Whitt*, 2025-Ohio-424, ¶ 16 (3d Dist.). "On review, an appellate court is not to consider whether the evidence at trial should be believed but whether the evidence, if believed, could provide a

legal basis for the finder of fact to conclude that the defendant is guilty of the crime charged." *State v. Daniels*, 2024-Ohio-1536, ¶ 13 (3d Dist.).

> Accordingly, the applicable standard 'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.'

*State v. Reed*, 2024-Ohio-4838, ¶ 30 (3d Dist.), quoting *State v. Plott*, 2017-Ohio-38, ¶ 62 (3d Dist.).

**{¶29}** To establish a conviction for assault in violation of R.C. 2903.13(A), the State must prove that the defendant "knowingly cause[d] or attempt[ed] to cause physical harm to another . . . ." Pursuant to R.C. 2903.13(C)(4)(a), this offense is a felony of the fifth degree if

> [t]he offense occurs in or on the grounds of a local correctional facility, the victim of the offense is an employee of the local correctional facility or a probation department or is on the premises of the facility for business purposes or as a visitor, and the offense is committed by a person who is under custody in the facility subsequent to the person's arrest for any crime or delinquent act, subsequent to the person's being charged with or convicted of any crime, or subsequent to the person's being alleged to be or adjudicated a delinquent child.

## Legal Analysis

**{¶30}** Jones raises two main arguments herein. First, he asserts that the State failed to produce evidence that establishes he acted knowingly. R.C. 2901.22(B) states that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably

be of a certain nature." "[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Miller*, 2013-Ohio-3194, ¶ 30 (3d Dist.), quoting *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. 2001). Further, "[a] person is 'presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" *State v. Crutchfield*, 2024-Ohio-716, ¶ 14 (1st Dist.), quoting *State v. Morris*, 2016-Ohio-5490, ¶ 9 (1st Dist.).

{¶31} At trial, the State introduced footage from Officer Wall's body camera. The recording captured Jones screaming profanity and clenching his fists as he walked through Dorm B. He can then be heard getting louder as he walked down the main hallway and turned towards the corrections officers. After Officer Wall told him to stop yelling, Jones turned around and began walking towards the corrections officers. As Jones neared the corrections officers, he was still using a raised voice. Officer Wall then said, "Don't turn towards me," and began to turn Jones away from him.

{¶32} Officer Wall testified that he then sought to handcuff Jones to ensure "their safety" because Jones was acting increasingly "agitated." (Tr. 161). Jones can then be seen in the security camera footage shoving himself off of the wall with enough force to push Officer Wall across the hallway. As the scuffle continued, Officer Wall can be seen taking a swing at Jones. In response, Jones shoved Officer Wall across the length of the hallway and into the wall. Jones then used his open

hand to strike Officer Wall's head. Officer Wall and Officer Ortiz then struggled with Jones and brought him to the ground. *See also State v. Brefford*, 2025-Ohio-4436, ¶ 102 (10th Dist.).

{¶33} Ultimately, five corrections officers intervened to stop this struggle with Jones. *State v. Kunzer*, 2019-Ohio-1042, ¶ 15 (3d Dist.) (finding that a jury could infer that the defendant was aware that his continued struggle against an officer's efforts to restrain him would probably cause the officer physical harm). From this evidence, a rational finder of fact could conclude that Jones knowingly acted in a manner that could cause physical harm to Officer Wall. *Brefford* at ¶ 103. Thus, this first argument is without merit.

{¶34} Second, Jones argues that the State failed to produce evidence that Officer Wall suffered physical harm. As an initial matter, we note that the State had to establish that Jones "caused *or attempted to cause* physical harm" to Officer Wall. (Emphasis added.) (Tr. 277). R.C. 2903.13(A). Thus, under the statutory language, the State only needed to show that Jones "*attempt*[*ed*] to cause physical harm" and was not required to establish "actual physical harm." (Emphasis sic.) *State v. Hendricks*, 2020-Ohio-5218, ¶ 35 (6th Dist.). *See also State v. Hudson*, 2019-Ohio-3497, ¶ 9 (1st Dist.); *State v. Culbertson*, 2026-Ohio-333, ¶ 38 (2d Dist.); *State v. Smith*, 2022-Ohio-1984, ¶ 59-64 (12th Dist.).

**{¶35}** Further, "[p]hysical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Under this standard, "[t]he slightest injury is enough proof of physical harm." *State v. Bailey*, 2023-Ohio-1267, ¶ 20 (5th Dist.), quoting *State v. Daniels*, 2018-Ohio-1701, ¶ 35 (1st Dist.). At trial, Officer Wall testified that he had bruising on his arm as the result of this altercation. Tr. 172. The jurors could conclude from this testimony that he suffered some physical harm as defined by the Ohio Revised Code. *State v. Thoman*, 2016-Ohio-748, ¶ 31 (3d Dist.); *State v. Reese*, 2005-Ohio-5724, ¶ 12 (finding that "[b]ruising constitutes 'physical harm'"); *State v. Elkins*, 2024-Ohio-1314, ¶ 28 (12th Dist.).

**{¶36}** From the evidence produced by the State at trial, a rational trier of fact could find that Jones acted knowingly and that he caused physical harm to Officer Wall. Having examined the evidence in a light most favorable to the prosecution, we conclude that Jones's arguments fail to establish that his conviction for assault is not supported by sufficient evidence. Accordingly, the second assignment of error is overruled.

*Third Assignment of Error*

**{¶37}** Jones argues that his conviction is against the manifest weight of the evidence.

Legal Standard

**{¶38}** "A manifest-weight analysis examines whether the State has carried its burden of persuasion at trial." *State v. Carroll*, 2024-Ohio-1626, ¶ 58 (3d Dist.). On review, "an appellate court's function . . . is to determine whether the greater amount of credible evidence supports the verdict." *State v. Harvey*, 2020-Ohio-329, ¶ 12 (3d Dist.), quoting *Plott*, 2017-Ohio-38, at ¶ 73 (3d Dist.).

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, ¶ 36 (3d Dist.), quoting *Plott* at ¶ 73, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶39}** In this analysis, "the credibility of witnesses is primarily a determination for the trier of fact." *State v. Morris*, 2022-Ohio-3608, ¶ 41 (3d Dist.), quoting *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.). For this reason, an appellate court must "allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 2014-Ohio-5320, ¶ 7 (3d Dist.). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Hunter*, 2011-Ohio-6524, ¶ 119, quoting *Thompkins* at 387.

Legal Analysis

**{¶40}** Jones raises two main arguments herein. First, he asserts that the jury lost its way in finding that he acted knowingly. While testifying in his defense, Jones stated that he screamed "Get the f**k off me" as he was about to be handcuffed and shoved Officer Wall across the hallway. (Tr. 244). He explained that he reacted in this manner because he felt a sharp pain in his arm. Tr. 228. He then testified that he pushed Officer Wall but only to stop the sharp pain he was experiencing. Tr. 229.

**{¶41}** However, Jones also admitted that he "one-handed threw Officer Wall all the way across the hallway into the wall . . . ." (Tr. 246). Jones agreed with the prosecutor that the hallway appeared to be around seven feet wide and that he pushed Officer Wall across this entire distance. Tr. 246. As to his disposition in this timeframe, Jones affirmed that he went from being "sad and hurt to angry and mad" as he walked out of Dorm B. (Tr. 239). He also affirmed that he could be fairly described as "pissed" by the time he shoved Officer Wall. (Tr. 246).

**{¶42}** More importantly, a recording of the entire incident was captured by a security camera. In this footage, Jones can be seen shoving Officer Wall with enough force to push him across the width of the hallway before he (Jones) continued to struggle with Officer Wall and Officer Ortiz. While two corrections officers were trying to restrain him, Jones was then able to shove Officer Wall across the hallway a second time and push him into the opposite wall. Jones affirmed that

he was six feet, four inches tall; weighed 220 pounds; and "overpowered" two corrections officers during this incident. (Tr. 250).

{¶43} On appeal, Jones points out that, during this struggle, Officer Wall swung a closed fist at him before he (Jones) swung at Officer Wall. But this sequence of events came after Jones had already shoved Officer Wall across the hallway and as Jones was actively resisting the corrections officers. Further, Jones continued to struggle until four corrections officers were restraining him and he was informed that he would be tased if he did not stop resisting. Having examined the evidence in the record, we conclude that the jury did not lose its way in finding that Jones acted knowingly. Thus, the first argument is without merit.

{¶44} Second, Jones asserts that his conviction is against the manifest weight of the evidence because the State did not introduce any pictures, medical records, or reports to confirm Officer Wall's testimony that he had bruising on his arm. However, a conviction is not against the manifest weight of the evidence simply because the State did not produce photos or medical evidence to corroborate a witness's testimony. *State v. Shelton*, 2024-Ohio-249, ¶ 11 (8th Dist.); *State v. Summers*, 2003-Ohio-5866, ¶ 31 (11th Dist.). Thus, the second argument herein is without merit. Having examined the evidence in the record, we find no indication that the jury lost its way and returned a verdict that was against the manifest weight of the evidence. Accordingly, the third assignment of error is overruled.

*Conclusion*

**{¶45}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Marion County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and MILLER, J., concur.**

Case No. 9-25-24

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____
John R. Willamowski, Judge

_____
William R. Zimmerman, Judge

_____
Mark C. Miller, Judge

DATED:
/hls

-21-